DENNIS McDONALD and FRANCES V. McDONALD, Respondents,
*v.* FREDERICK GRONEFELD, Appellant.

1. *Executions — Act March 23, 1863 — Fresh levies after return day, effect of.* — Where an execution was levied, prior to the return day thereof, on certain property, it would not continue in force, under the act of March 23, 1863 (Sess. Acts 1863, p. 20, § 2), for the purpose of a fresh and independent levy on other property after the return day of the execution. Under that act the execution would afterwards be dead for all purposes, except the preservation of rights which attached prior to the return day by virtue of the antecedent levy.

*Appeal from Sixth District Court.*

*Lewis & Bruere,* for appellant.

*Orrick & Emmons,* an l *Lackland,* for respondents, cited Bank of the State of Missouri v. Bray *et al.,* 37 Mo. 194; Newman v. Hook, 37 Mo. 207; Turner v. Kellar, 38 Mo. 332; Lackey v. Lubke, 36 Mo. 115; Merchants' Bank of St. Louis v.

Harrison, 39 Mo. 433–4; Swift's Dig. 795; Gantly v. Ewing, 15 Curtis' U. S. 608 *et seq.*; Williams v. Amory, 14 Mass 28–9; Litchfield v. Cudwell, 15 Pick. 27–8; Breese v. Bange, 2 E. D. Smith, 474; Russell v. Dyer, 40 N. H. 173; McElwee v. Sutton, 2 Bailey, 361.

CURRIER, Judge, delivered the opinion of the court.

This is an ejectment. The plaintiff Frances V. McDonald, the wife of the other plaintiff, deduces her title through George G. Johnson, who purchased the premises in suit at sheriff's sale, on execution against the plaintiff Dennis McDonald. The defendant deduces title through Benj. H. Payne, who also purchased the same premises at sheriff's sale, on executions against the same party. Dennis McDonald is, therefore, the common source of title. Deeds were duly executed in pursuance of these respective sales; the sale and conveyance to Payne being prior to the sale and conveyance to Johnson. It is conceded that if the deed to Payne is valid, the defendant has the title; but if this deed is invalid, then the title is conceded to be in McDonald.

The validity or invalidity of that instrument depends upon a solution of the question whether or not the executions under which the premises were sold to Payne were, at the time of the levy of them upon the particular property in dispute, in life and of force for the purposes of that levy, and the subsequent sale pursuant thereto.

These executions were issued in February, 1863, and were made returnable at the next succeeding term of the St. Charles Circuit Court, which was held in March of that year. Prior to the return day, they were levied upon several tracts of land of the defendant therein (Dennis McDonald), but not upon the tract in suit. The land thus levied upon was advertised for sale at the March term of the St. Charles Circuit Court, but the sale was postponed by agreement of parties. In August of the same year the property was readvertised for sale at the then next succeding term of the court, and this advertisement contained a description of the property sued for in this action, which on the day of sale, was sold and bid in by Payne, as already suggested. The execu-

tions in question, as respects the land in suit, had expired by their own limitation, and became *functus officio*, long prior to their levying upon that particular parcel of land, unless they were kept alive and continued in force by the operation of the act of March 23, 1863. (See Acts 1863, p. 20, § 2.) There is no contest over this proposition. (Bank of Missouri v. Bray, 37 Mo. 194.) The determination of the question presented depends, therefore, upon the construction to be given to that enactment. The second section is relied on. It provides that "executions now issued, or that may be hereafter issued from any court of record, and levied upon real estate, if from any cause the real estate shall not be sold at the next term of the court from which said execution has been issued, or may hereafter be issued, said execution and the lien of said levy shall remain and continue in full force until a term of court is held in the county where said property may or can be sold."

The historical fact and circumstances which induced this legislation were the same as those which occasioned the act of March 17, 1863 (Sess. Acts 1863, p. 24, § 1), extending the lien of a judgment from three to five years. These acts wese passed within five days of each other, and arose out of a disturbed and abnormal condition of society. Property was depressed and courts were, in various localities, broken up. Sales could not be effected because the courts were closed. Therefore the liens of judgments and those created by levy of execution were extended primarily for the protection of the rights of creditors, but subordinately to avert an unnecessary sacrifice of the property of debtors. These acts are to be construed in the light of cotemporaneous history, and with a view to the accomplishment of the objects intended by them.

But for the act of March 23, the levy of an execution after the return day therein specified, that is, after the execution had spent its force and become *functus officio*, would be utterly void and of no effect. (37 Mo. 194, *supra*.) In what way does the act affect the question of the original levy? Evidently in no way at all. It provides simply that where a levy has once been made, by which must be understood a legal and valid levy prior to the

return day of the execution, there the "lien" thereof shall be protected and continued, although the sale shall not be had at the next term of the court; and further, that for the purpose of making the lien, created by the levy and continued by the statute, practically effectual for the purpose intended, the execution under which the levy was made should also be continued in force, not only till the next succeeding term, but until a term when the property levied upon "may be sold." (Stewart v. Severance et al., 43 Mo. 322.) The sole object of continuing the execution in life was to work out beneficially to the execution creditor an existing lien, created by a levy prior to the return day of the execution. The statute has this extent and no more. It does not enter into the policy or objects of the law to authorize fresh levies upon executions already dead for all purposes, except the preservation and protection of rights which attached prior to the return day of the execution in virtue of the antecedent levy. The opposite construction is technical, and spends its force upon the letter and mere grammar of the act, overlooking the evil intended to be guarded against, and the remedy intended to be applied.

In the case of the Bank of the State of Missouri v. Bray, already cited, the court held that the second section of the act of 1863, in relation to executions, and the 54th section of the act of 1855 (R. C. 1855, p. 748), had reference only to cases where levies had been duly made on valid subsisting executions; that is, where a levy had been made prior to the return day of the execution. The principle of this decision is applicable to the case at bar. The only point of distinction between the two cases consists in this, that in the bank case no levy at all had been made prior to the return day of the execution, whereas here a levy had been made prior to that day, but not upon the property in suit, but upon other property. According to the construction contended for by the defendants, the levy made prior to the return day upon other property might have been subsequently abandoned, and still the execution would have continued in force for the purposes of a fresh and independent levy, although it would have ceased to have legal vitality but for the first levy.

The act in question, in my opinion, does not admit of this construction, and the judgment, with the concurrence of the other judges, will be affirmed.