ROBERT M. STEWART, Appellant, *v.* JOHN SEVERANCE *et al.*, Respondents.

1. Judgment affirmed. For the facts in the case, and questions of law originally arising therein, see same case in 43 Mo. 322.

*Appeal from Fifth District Court.*

*Strong & Chandler*, and *Hall & Oliver*, for appellant.

*Bassett & Van Waters, Vories & Vories*, and *Grubb*, and *E. C. Hill*, for respondents.

WAGNER, Judge, delivered the opinion of the court.

This case was before this court on a former occasion (43 Mo. 322), where the facts sufficiently appear, and where we endeavored to lay down the principles of law which must guide and control its decision. The only question now presented arises upon the evidence, and is whether any improper practices were indulged in at the sale which would justify its being set aside and authorize a court in granting the relief prayed for in the petition.

It is unnecessary, and would promote no useful purpose, to review the evidence in detail, but a careful inspection of the record has fully convinced us that the facts entirely fail to make out a case which would warrant an interference with the decree which was rendered in favor of the defendants in the court below. Had the case been rested on the testimony adduced for the plaintiff there would have been an utter failure to show such misrepresentations or collusion as would have authorized the avoidance of

the sale. A few of the more prominent points may be noticed without attempting to minutely describe the whole.

According to the statement of Carter, there was nothing more than an informal understanding that if anything was left after indemnifying the sureties on the bond, it should be applied to the benefit of the plaintiff. And he says that although he stated to some parties at the time of the sale that such was the object, still he does not know that any one ceased or was deterred from bidding in consequence thereof. He admits that in the general depression that was then prevailing, real estate had scarcely any marketable value, and in this he is borne out by all the testimony in the cause. He also states that there was no agreement to bid in the property for the plaintiff's benefit, and that it was the understanding between the parties interested that if the property brought enough to indemnify them and save themselves harmless, it might go. Severance and Weakly got the deed to the land because they paid the money.

The witnesses, Turner and Owens, both state that they would not have bid on the property unless they could have got a good title; and it is clearly shown that the lots which Turner desired to have were largely encumbered; whilst the evidence of Owens shows that he was not willing under the circumstances to pay more for the lots than they were sold at, and that he contented himself with making a few nominal bids; and as Carter and Vories continually overbid him, he did not get any of the property. I have been unable find anything in the record to warrant the conclusion that he refrained from entering into competition at the sale from motives of benevolence or on account of any particular sympathy for the plaintiff.

Severance, who was called as a witness and testified for the plaintiff, positively denies that there was any understanding whatever that anything was to be saved for the plaintiff. He says that the parties were only desirous of saving themselves from any loss as sureties on plaintiff's bond, and that the property was the only thing that they could look to for indemnity; that he tried to get persons to bid in the property and make it pay enough to discharge the obligation, but no one was willing to incur the risk;

that when they agreed upon a schedule of prices for the purpose of making the property bring sufficient to satisfy the demand, his instruction to Carter, who did the bidding, was that if any one bid over the amount specified, to let him have the property. After the property was struck off to him he went to several persons and tried to get them to furnish the money and take the property at the prices which he had bid, but no one would do so ; and he finally induced Weakly to take half and pay half the purchase money, and the deed was accordingly made to him and Weakly.

This testimony is of the utmost importance, as showing how the purchase was looked upon at the time, and the difficulty of getting people to invest money in real estate at any price, and stands wholly uncontradicted. Allen H. Vories, an intelligent attorney, and who was plaintiff in the execution, was at the sale throughout, and testifies to its fairness. He kept the minutes of the sale, and heard nothing said to repress bidding or prevent competition. As there were a large amount of taxes unpaid and the property was encumbered by mortgages, he apprehended that it would not bring enough to satisfy his claim. He therefore fixed a price on each lot sufficient to make the aggregate pay off the debt, and in nearly every instance Carter overbid him and bought in the property for Severance.

The above are the leading points in the evidence. A good deal was introduced which was merely cumulative of the foregoing, and more in relation to the value of the property. At the time the property was sold the country was in the midst of civil strife and contention. Everything was depressed, and there was little or no sale for property. Nearly all of the real estate in controversy was unimproved and heavily encumbered, and liable for several years' unpaid taxes, and was considered at the time unmarketable. The sale was a forced one, and the defendants had no control over it. Severance was on Stewart's bond, and his only resort to save himself from liability on his obligations was to make the property bring the amount for which he was bound as security. The evidence shows that the prices at which the property sold left a small balance still due, which he paid. There is nothing, as far as inadequacy is concerned, to impeach the sale ; for when we

take into consideration the liens that were outstanding on the property, it brought as much as is customary at such sales, and, some of the witnesses state, more than other property selling at that time.

From an attentive perusal and consideration of the whole case, there is nothing to show that any improper means were resorted to, that there was any connivance or fraud practiced for the purpose of cheating or overreaching the plaintiff, or that the sale was conducted otherwise than with fairness and honesty. Wherefore I think the judgment should be affirmed. The other judges concur.