## Case No. 17,340.

### WEBSTER v. WOOLBRIDGE.

[3 Dill. 74.][1]

Circuit Court, E. D. Missouri. 1874.

BANKRUPT ACT—LIEN OF JUDGMENT—EXECUTION SALES—RETURN DAY—SALE AFTER RETURN DAY—MISSOURI STATUTES.

1. A lien on real estate lawfully obtained under a valid judgment, by a creditor before the

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

commencement of the proceedings in bankruptcy against the judgment debtor, is protected against the bankrupt act [of 1867 (14 Stat. 517)], and is good against the assignee in bankruptcy.

2. Without statute provision an execution is functus officio after the return day; but by the legislation of Missouri, where a levy on land has been duly made, the power to sell exists after return day, for the execution and lien thereby created are by statute continued in force until the end of the second or later term of the proper court, if a sale be not made at the next term after the levy.

3. These principles applied and *held* to preserve a lien of a judgment creditor although no sale had been made under his levy.

[Appeal from the district court of the United States for the Eastern district of Missouri.]

On the 9th day of May, 1872, John M. Woolbridge obtained a judgment in the Pettis county circuit court against Powhatan Woolbridge for $6,269.08 on which an execution was issued, tested May 21, 1872, directed to the sheriff of St. Louis county, returnable at the September term, 1872, of the Pettis county circuit court. This suit was levied by the sheriff of St. Louis county on real estate of the said Powhatan on May 23, 1872, and the sale advertised for the 19th day of June ensuing. On the 18th day of June, 1872, a petition in bankruptcy was filed against the said Powhatan in the district court of the United States for the Eastern district of Missouri, at St. Louis, and on that day the Central Bank of St. Louis, representing itself to be a creditor of the said Powhatan, filed in the said federal district court a bill in equity against the said John M. Woolbridge and Philip C. Taylor, the sheriff of St. Louis county, stating the foregoing facts, and averring that the said judgment was fraudulent under the bankrupt act, and praying that the defendants be restrained from enforcing the judgment or making the sale. On June 19th a provisional injunction was ordered as prayed, which was continued in force until June 29th, 1872, on which day the court made the following order: "Ordered that the provisional injunction be dissolved, and with the consent of the parties, it is further ordered, that P. C. Taylor, sheriff, do proceed to sell under the execution the real estate levied on, and hold the proceeds subject to the further order of this court." For some reason, which does not appear, this sale was not made by the sheriff; and, on the 31st day of August, 1872 (the suit being returnable to the September term, 1872), he returned the execution with a return thereof of his levy, May 23d, 1872, and that he did not sell by reason of the injunction order of the United States district court of June 19th, 1872. On the 31st July, 1873, a second execution upon the said judgment, reciting the former suit and the levy and return thereon, was issued to the sheriff of St. Louis county. On the 3d day of November, 1873, Webster, the present plaintiff, having been appointed assignee in bankruptcy

of Powhatan Woolbridge, filed a bill supplemental to the one which had been filed by the Central Bank, setting forth the same facts and others, the object of which was to show that the said judgment of John M. Woolbridge had been procured in fraud of the bankrupt act, and praying that apparent lien of the said judgment and execution be set aside and declared void, and for general relief. Answer and replication were filed, and proofs taken, and on the 17th day of February, 1874, a decree was passed by the district court to the effect that the judgment was valid, but that neither the same nor the execution levied by virtue thereof was a lien upon the real estate in St. Louis county. [Case unreported.] From this decree John M. Woolbridge appeals. No appeal was taken by the assignee.

Krum & Patrick, for appellant.

F. N. Judson, for assignee.

DILLON, Circuit Judge. The decree establishes that the judgment of the appellant against the bankrupt prior to the proceedings in bankruptcy was fairly obtained and is valid. The assignee has not appealed, and does not question the correctness of this part of the decree. Tested by the doctrine of City Bank of St. Paul v. Wilson, lately decided by the supreme court of the United States (17 Wall. [84 U. S.] 473), this judgment rendered in Pettis county would not, of itself, be a lien upon lands in St. Louis county, but the execution issued upon it became a lien on those lands when the same was levied on them. Gen. St. 1865, p. 643, § 23. This is admitted. The levy was made and the lien by virtue thereof became perfect prior to the commencement of proceedings in bankruptcy against the judgment debtor, and this lien unless it has been lost is protected by the bankrupt act, and is good as against the assignee in bankruptcy.

The assignee in bankruptcy insists that by the laws of the state of Missouri, the lien acquired by the levy ceased in consequence of the failure of the sheriff to sell as required by the statute and the command of the writ, and as he was expressly authorized and ordered to do, by the district court of the United States, on the 29th day of June. On the other hand the judgment creditor maintains that the lien given by the levy still subsists, and that the bankruptcy court ought to have recognized its validity. Unless there is a statute to that effect, a lien acquired by a valid levy during the life-time of the writ subsists, though no sale be made under the writ, and the levy being returned, it may, after the return day, be enforced by a venditioni exponas.

And the question here is, whether there is a statute in the state under which the lien of the execution by virtue of the levy has ceased. It will be observed that this is a contest not between two conflicting levies, but between the judgment creditor and the general creditors represented by the assignee in bankruptcy.

It will also be observed that if the sale had been made by the sheriff, and the money brought into court, the decree of the court would have given it to the judgment creditor. It was not his fault that he was enjoined. No intervening rights have attached. If he has lost his priority it results from his inaction and from that alone. It will also be observed that the validity of his judgment was all the time being questioned in the district court by the original and supplemental bill, and that when the order dissolving the injunction was made, it was with a view to draw the proceeds of the sale from the state court into the bankruptcy court so as afterwards to determine the rights of the contesting parties thereto. Nothing would have been gained to the estate had the sale been made, and nothing has been lost to it by the omission to make it. Under these circumstances, if the judgment creditor has lost the fruits of his vigilance and benefit of his levy it must be by virtue of a direct and express statute to that effect.

The sections of the statute (Gen. St. 1865, p. 646) relied on by the assignee are as follows:

"Sec. 51. In all cases where an execution is or shall be issued and levied by the proper officers upon real estate, and, for any cause, a sale of such real estate shall not be made at the next term of the court of the county in which such sale is to be made, the execution and lien created thereby shall remain and continue in force until the end of the second term of the court of the county where the land is situated, and until a term of said court is held at which said real estate may be sold according to law.

"Sec. 52. Where an execution is issued from a court of record in one county, and sent to the sheriff of any other in this state, and the same is levied on real estate and from any cause the circuit court of the last mentioned county shall not be held before the return day of the execution, the sheriff shall retain said execution, and the levy made by virtue thereof shall remain in full force until there shall be a term of the circuit court in said last mentioned county at which said real estate may be sold."

These statute provisions will be better understood by referring to the act of March 23d, 1863 (Laws 1863, p. 20), and the decisions of the supreme court of the state construing that act, and by comparing with it the sections above quoted. Stewart v. Severance, 43 Mo. 322; Wood v. Messerly, 46 Mo. 255; Porter v. Mariner, 50 Mo. 364; McDonald v. Gronefeld, 45 Mo. 28; Bank v. Bray, 37 Mo. 194; Lackey v. Lubke, 36 Mo. 115. Upon the exact point now under consideration, in the absence of any opinion of the supreme court of the state to guide me, it is my judgment that sections 51 and 52 do not destroy or put an end to the lien of the levy under the execution issued upon the appellant's judgment.

In Missouri the executions are returnable in term and the law has always required execution sales to be made during a term of the circuit court. Bank v. Evans, 51 Mo. 335, 347. Without a statute an execution is functus officio after the return day. Bank v. Bray, 37 Mo. 194. But by the statute under consideration, where a levy has been duly made, the power to sell exists after the return day, for the express provision is that if there is a levy when the writ is in force and the sale is not made at the next term, the execution and lien created thereby shall remain and continue in force until the end of the second term and until a term of court is held at which the real estate may be sold according to law.

This obviates the necessity of a new writ, and authorizes a sale upon the writ under which the levy was made, at the second term of the proper court, or, if need be, at a still later term. But when a term arrives at which the land levied on may be legally sold, and it is not, then a sale made afterward by virtue of the original execution might be, and probably would be void. Viewed in the light of the act of 1863 and its purposes (45 Mo. 30; 42 Mo. 332), the statute is entirely consistent with the common law doctrine, that after a levy the writ may be returned on the return day and the levy enforced by a venditioni exponas. And such is the opinion of Adams, J., in Porter v. Mariner, 50 Mo. 364, who, construing the act of 1863, upholds a sale made in 1865, under a new execution, upon a levy made in 1861, and says, arguendo, that "a venditioni exponas might have been issued (in 1865) on this levy (in 1861) without regard to the statute" of 1863. The decree appealed from will be reversed, and the case remanded to the district court. Decree accordingly.

That assignee in bankruptcy takes, subject to existing legal and equitable rights in third persons, see Meador v. Everett [Case No. 9,376]; Hamilton v. National Loan Bank [Id. 5,987].