## NATIONS v. PULSE et al., Appellants.

### Division One, May 27, 1903.

1. **Foreclosure:** SUIT TO SET ASIDE PARTNERSHIP MORTGAGE SALE: NO CAUSE OF ACTION. Two partners in the sawmill business gave a deed of trust on their partnership lands, and when payment was demanded for the balance of the note, coupled with a condition that if they were not able to pay the whole the holder would take $1,000 and wait for the balance, they consulted together, and plaintiff went to Indiana and never gave any further attention to the matter. The other was in partnership in Indiana with his brother, and this firm owed a banker a considerable debt and induced him, in order to protect that, to buy up the note of the Missouri partnership, which he did, and foreclosed the deed of trust, and bought in the land for less than the debt, and afterwards sold two sections of it for far more than the debt, and the judgment in this suit compels him to account to plaintiff for the excess, and decrees out of him the remaining land, on the theory that he and the two brothers conspired to defraud plaintiff of his interest in the land by having the banker buy the note and have the deed of trust foreclosed, and on the further theory that the other partner was guilty of fraud in not notifying plaintiff of the banker's purchase of the note, of the demand for its payment, and of the foreclosure proceedings. *Held*, that the petition did not state any cause of action, since the banker did only what he had a legal right to do, and, hence, the doing thereof can not be made the basis of a fraud, and because the failure of his partner to notify him of the foreclosure proceeding was not fraud.

2. ——: CONSPIRACY. There can be no conspiracy to do a lawful act.

3. ——: PARTNERSHIP: NOTICE. One partner has no cause of action against another because the other does not notify him that the holder of their partnership note had sold it to a third party, who was about to foreclose it, and that the purchase of the note had been brought about by his suggestion and the intervention of his brother, who was a partner in another business. And certainly the rights of the purchaser of the note and of the lands at the foreclosure sale are not affected by the failure of one partner to give to the other notice of such matters. The partner is entitled to such notice of the foreclosure as he contracted for in the deed of trust.

Appeal from Stoddard Circuit Court.—*Hon. Frank R. Dearing,* Judge.

REVERSED.

*Wilson Cramer* for appellants.

*W. H. Miller* for respondent.

(1) The referee's report stands as the verdict of a jury and will not be disturbed when supported by substantial evidence. Western Benev. Ass'n v. Kribber, 48 Mo. 37; Singer Mfg. Co. v. Givens, 35 Mo. App. 608; Donnovan v. Barnett, 27 Mo. App. 460; Dunlap v. Elks' Social Club, 25 Mo. App. 180; Darling v. Potts, 118 Mo. 530; Gimbel v. Pignero, 62 Mo. 240. This last case was a bill in equity. The court said: "The referee found in favor of the plaintiff and he had opportunities for judging of the credibility of witnesses which we have not. The report stands as the verdict of a jury and when there is any evidence to sustain it we will suppose that the whole evidence was properly weighed and the requisite effect given to it." (2) Appellants contend the petition does not state facts sufficient to constitute a cause of action. The correctness of this position can only be determined by an inspection of the pleading itself. It took defendants a long time to find this out. It was not suggested below before trial. This court will indulge (if indulgence be necessary) every presumption in favor of the petition at this stage of the proceeding. Learned counsel has not told us wherein its defects lie, but contents himself with the general catch-all phrase "not sufficient." An analysis of the petition, we think, removes all doubt on this proposition. Because a man becomes the bona fide holder of the note, secured by a deed of trust, that does not authorize him to conspire with one of the makers to defraud the co-maker. That is what the petition charges McCullough did, and there is abundant proof to sustain the charge.

MARSHALL, J.—This is a bill in equity to set aside the sale under a deed of trust made on March 2, 1891, by the plaintiff, John W. Nations, and the defendant, O. L. Pulse, to Lansing Staats, trustee, to secure to O. C. Frisbee a note for ten thousand dollars, and covering all of sections nine, ten and fifteen of township 27, range 12, in Stoddard county.

The case made is this:

On March 2, 1891, John W. Nations and O. L. Pulse were partners, engaged in the sawmill business at Bell City, Stoddard county, Missouri. They had both resided in Indiana, and after the partnership was formed Nations continued to live in Indiana, making occasional trips to Bell City, while Pulse removed to Bell City and resided there. On said March 2, 1891, they purchased, from O. C. Frisbee, the land in question here, being sections nine, ten and fifteen in township 27, range 12, for an agreed price of $12,000, and paid thereon the sum of $2,000 with partnership funds, and gave their note, secured by deed of trust, on the land, for the balance of $10,000. O. L. Pulse thereafter conveyed to his brother, W. C. Pulse an undivided half-interest in his part of the land, and later, in December, 1893, John W. Nations sold his interest in the business, including the sawmill, and other personal property, to George H. Fleetwood. This dissolved the firm of Nations and Pulse, and thereupon O. L. Pulse and George L. Fleetwood entered into partnership in the sawmill business, and continued cutting timber on the land, Fleetwood cutting for Nations at so much a thousand to pay the $2,000 he had agreed to pay Nations for his half-interest in the mill. Nations did not sell his half-interest in the land. Thus the matter ran along until 1896, at which time the indebtedness to Frisbee on the ten-thousand-dollar note had been reduced to $2,848.44. Frisbee demanded payment thereof from both Pulse and Nations, but offered to take $1,000 in cash or in lumber and to wait for the balance. Na-

tions, who was then in Bell City, and Pulse consulted about the situation. Neither had any money. Both were insolvent, and unable to get any money with which to pay Frisbee. Thereupon Nations left Bell City and returned to his home in Indiana, without making any arrangement whatever to meet the obligation to Frisbee. Shortly thereafter Nations was taken sick, and he never did nor attempted to do anything concerning the matter until he brought this suit.

In addition to his timber business in Missouri and his partnership with Nations and subsequently with Fleetwood, O. L. Pulse was engaged in business in Indiana, in partnership with his brother, W. C. Pulse. The latter had a brother-in-law named C. K. McCollough, who was engaged in the banking business in Anderson, Indiana. The firm of O. L. and W. C. Pulse owed C. K. McCollough the sum of $1,800. They urged McCollough to buy the Frisbee claim, and thus protect the claim of $1,800 aforesaid. McCollough did so, and paid Frisbee the balance due on his note of $2,848.44, and took an assignment of the note and deed of trust. Thereupon he sent the note and deed of trust to an attorney in Stoddard county for collection. The attorney demanded payment thereof from O. L. Pulse, and failing to collect it, he procured the trustee to advertise the property for sale under the deed of trust according to the terms thereof. The sale was held at courthouse, at Bloomfield, the county seat, and C. K. McCollough became the purchaser for the sum of five hundred dollars. This sale was in all respects in conformity to the terms of the deed of trust, and was open and free, and there is nothing in this record which impeaches its regularity or legality.

After the purchase thereof McCollough sold sections ten and fifteen to James C. Pulse for $6,400, and thereafter James C. Pulse sold the same to Lemuel Boone Sexton for $7,000. There is nothing in this rec-

ord that in any manner casts any doubt on the bona fides of these sales.

McCollough retained the title to section nine, and leased it to O. L. & W. C. Pulse.

Thus the matters stood until November 23, 1897, when John W. Nations instituted this suit, against O. L. Pulse, W. C. Pulse, James C. Pulse, C. K. McCollough, and Lemuel Boone Sexton.

The gist of the petition is that the defendants "combined, conspired and colluded together for the purpose of defrauding this plaintiff out of said lands and to procure the title thereto, did, on the eighth day of May, 1896, cause the same to be sold under and by virtue of said deed of trust by the said Lansing Staats, trustee, and at said sale C. K. McCollough, who in the meantime had through O. L. Pulse become the assignee of the notes and deed of trust hereinbefore mentioned, became the purchaser of all said lands therein described for the sum and price of five hundred dollars. Plaintiff states that said land was then and now is reasonably worth the sum of twelve thousand dollars, and that the said O. L. Pulse, fraudulently and willfully failed to advise the plaintiff of the sale of said lands or of the desire of the payee or assignee of said notes and deed of trust that payment was demanded."

It is further charged that after Nations went back to Indiana he often wrote to O. L. Pulse about the note and deed of trust, but that Pulse refused to answer his letters and that he, Nations, did not know that the holder of the note was pressing for his money, but on the contrary that a short time previously he had received a letter from the payee of the note saying he did not want his money, but that the plaintiff and his partner could have more time in which to pay the same. This allegation, however, is not supported by the proofs, but on the contrary the plaintiff himself admitted that Frisbee was demanding his money, or at least one thousand dollars in money or lumber, and that he and O. L. Pulse were

both insolvent and unable to pay or do anything, and that he went back to Indiana leaving the matter in this shape and unprovided for, so no further attention need be paid to this averment.

The prayer of the petition is for a cancellation of the trustee's deed to McCollough, and of the deeds from McCollough to James C. Pulse and from him to Sexton and for an accounting.

The answer admits the partnership, the execution of the deed of trust, the residence of the parties, denies all the other allegations of the petition, and alleges that the affairs of the partnership have never been wound up and avers that the plaintiff is indebted to the firm in the sum of thirteen thousand dollars, and prays for an accounting.

The reply denies the new matter in the answer, and joins in the prayer for an accounting and to that end asks for the appointment of a referee to take and state the account. Subsequently the defendants were permitted to amend the answer by striking out the prayer for an accounting.

By consent of the parties the whole case was referred to a referee, who heard the case, and made a report finding that the defendants conspired to defraud the plaintiff out of his interest in the land by having McCollough buy the Frisbee note and deed of trust and then sell the land under the deed of trust, and that O. L. Pulse was guilty of fraud in not notifying the plaintiff of such purchase and sale; that James C. Pulse and Lemuel Boone Sexton were innocent of fraud, and therefore the deed to sections ten and fifteen can not be set aside, but finds the value of those sections to be $6,400, and that the balance due on the deed of trust was $2,873.74, and recommends that the latter sum be deducted from the former and that judgment be rendered for the difference, $3,526.26, against McCollough and in favor of the firm of Nations & Pulse, and that the trustee's deed to McCollough for section nine be set

aside and the land be decreed to the firm of Nations & Pulse, and that the costs be taxed against O. L. Pulse, W. C. Pulse, and C. K. McCollough, and that McCollough be allowed no credit for the costs of foreclosing the deed of trust.

The court adopted the recommendations of the referee and entered judgment accordingly, and the defendants appealed.

## I.

The judgment of the circuit court is clearly erroneous and must be reversed. The only allegation in the petition that could be claimed would prevent a general demurrer being sustained to it, is that the payee of the note had granted an extension of time to Nations and Pulse to pay the debt and that in the face of this the deed of trust was foreclosed. And it is not altogether clear that even that is sufficiently pleaded to make the petition state a cause of action, for it is not affirmatively alleged for what length of time the extension was granted nor that the foreclosure was had before the extended time had expired. Outside of this, the petition states no cause of action whatever. And this imperfectly stated plea of extension is wholly disproved by the plaintiff's own testimony, and all the other testimony in the case. The only shadow there is in the case for making such a claim, is the fact that Frisbee demanded the balance due on the note, and said if they could not pay, he would take $1,000 in money or lumber and wait for the balance. But it appears uncontradictedly that both Nations and Pulse were insolvent and wholly unable to pay anything, and notwithstanding it is now claimed there was fifteen hundred dollars' worth of timber on the land, no attempt was made by either of the parties to turn any of it over to Frisbee, and Nations left Missouri and went back to his home in Indiana and made no provision for the payment of the note and no attempt

to comply with Frisbee's proposition, nor did he then or thereafter at any time say or do anything to pay the debt or to save the land or to prevent the foreclosure of the deed of trust, but on the contrary he remained silent until after the foreclosure and then brought this suit charging fraud, and offering to pay whatever is due on the debt, although he testifies he was then and is now insolvent. It will be observed that the referee and court treated him even better than he asked, by decreeing section nine back to the firm of Nations & Pulse, and by holding McCollough liable for the value of sections ten and fifteen, and then deducting from that value the balance due on the Frisbee note and entering a judgment against McCollough and in favor of the firm of Nations & Pulse for the difference, amounting to $3,526.26, with six per cent interest from May 8, 1896. And this result is predicated upon the two postulates, first, that the defendants conspired to defraud the plaintiff of his interest in the land by having McCollough buy the note and deed of trust from Frisbee, and then have the deed of trust foreclosed according to its terms, and, second, that O. L. Pulse was guilty of a fraud in not notifying Nations of such purchase of such note, of the demand for its payment, and of the foreclosure proceedings.

As to the first, there is no pretense that there was anything illegal or irregular in the proceedings relating to the foreclosure, except that Pulse and the attorney for McCollough in contracting with the proprietors of the newspaper about the publication of the trustee's notice of sale, said, "Put the notice in any old place, that it was a mere matter of form, and the fewer that saw it the better," and that the notice was published "on the editorial page about the fifth column among a lot of legal notices." And it is not even argued that publishing the notice on the editorial page or among a lot of legal notices was tantamount to hiding it so that it would not be seen by the readers of the paper.

The debt was legally and honestly due to Frisbee, and the debtors made no arrangement to pay it when it was demanded. Nations went home and did absolutely nothing looking towards paying the debt, or preventing the foreclosure of the deed of trust or of saving the property. O. L. and W. C. Pulse were honestly indebted to McCollough in about the sum of $1,800. To help collect this debt, McCollough risked the expenditure of $2,848.44, by purchasing the note from Frisbee. There was no legal or moral obstacle or impediment in the way of the sale of the note by Frisbee or its purchase by McCollough. The latter was not at all intimate with O. L. Pulse, and the court finds had only met him twice and then only casually. After McCollough acquired the note and deed of trust he placed it in the hands of an attorney for collection, and when the attorney was unable to collect the note, he caused the trustee to advertise the land for sale under the deed of trust exactly in the manner and according to the terms that the plaintiff had agreed by the deed of trust that it should be done. The sale was open to all bidders. McCollough was the best and only bidder and bought the land.

All of these things McCollough had a legal right to do and Nations agreed when he signed the deed of trust might be done if the debt was not paid according to the terms of the contract.

Where a party does only what he has a legal right to do, the doing thereof can not be made the basis of a fraud. [Bank of Versailles v. Guthrey, 127 Mo. l. c. 193; Barr v. Cubbage, 52 Mo. 404; Stewart v. Severance, 43 Mo. 322.] In short, the rule is axiomatic that, "an action will not lie for a conspiracy to do a lawful act." [Hunt v. Simonds, 19 Mo. 583.]

The defendant McCollough did only what he had a legal right to do, and therefore no charge of conspiring with any one else to do so can afford the basis for an action. If the land was worth twelve thousand dollars

and the balance due on the note to Frisbee was only $2,848.44, or if Frisbee was willing to take $1,000 in money or lumber and there was fifteen hundred dollars' worth of lumber on the land, there was nothing to prevent Nations from borrowing the $2,848.44 on the security of the land, from some one else and paying off the Frisbee deed of trust, or of turning over the fifteen hundred dollars' worth of lumber to Frisbee and thus securing an extension of time. In fact, there was nothing to prevent Nations from making a new loan on the land and paying off the Frisbee deed of trust at any time before the actual foreclosure of that deed of trust. But Nations did none of these things. He did nothing. There is no foundation for his claim of conspiracy, and no merit in his case.

So also no fraud could be predicated, especially as to McCollough, upon the failure of O. L. Pulse to protect the land from sale under the deed of trust, by turning over the fifteen hundred dollars' worth of timber on the land to Frisbee, or of his failure to notify Nations that Frisbee had sold the note to McCollough and that the land was advertised for sale under the deed of trust. For it was as much the duty of Nations to turn over the lumber to Frisbee as it was Pulse's, and Pulse was under no obligation to notify Nations of the foreclosure proceeding. Nations got the very notice he stipulated for in the deed of trust, for the foreclosure, to-wit, a notice published in the paper. This was all he was entitled to under his contract.

There is a total absence of any evidence of any fraud in the case or in any step taken by any of the defendants in the case. It is the old story of a debtor mortgaging his property to pay his debts and failing to pay the debt, and then seeking the aid of a court to relieve him from his own improvidence and neglect of his own interests.

There is absolutely no merit in the case, and the judgment of the circuit court is reversed, and as there

is no possibility of the plaintiff making any better case upon a retrial it would be idle to remand the case, and therefore the order will be restricted to a simple reversal of the judgment of the circuit court.

All concur, except *Robinson, J.,* absent.